UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KEVIN SIERRA-LOPEZ

                Plaintiff,

v.                                                  Case No. 20-cv-305-pp

NURSE PAGELS,
CORRECT CARE SOLUTIONS,
and BROWN COUNTY,

                Defendants.

## ORDER GRANTING PLAINTIFF'S MOTION TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 7), SCREENING COMPLAINT AND DISMISSING CASE

Plaintiff Kevin Sierra-Lopez, who is in custody at the Kenosha County Detention Center and who is representing himself, filed a complaint alleging that the defendants violated his civil rights under 42 U.S.C. §1983. Dkt. No. 1. This order resolves the plaintiff's motion to proceed without prepaying the filing fee and screens the complaint.

**I.    Motion to Proceed without Prepaying the Filing Fee (Dkt. No. 7)**

The Prison Litigation Reform Act applies to this case because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. That law allows a court to let an incarcerated plaintiff proceed with his case without prepaying the filing fee if he meets certain conditions. One of those conditions is that the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b). Generally, once the plaintiff pays the initial partial filing fee, the court may

1

allow the plaintiff to pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id. Under 28 U.S.C. §1914(b)(4), a court also has the authority to determine that a prisoner is not required to pay an initial partial filing fee.

On March 11, 2020, the plaintiff submitted a prisoner trust fund account statement for the seven-month period from September 2019 through March 2020; it showed that his average monthly balance was zero. Dkt. No. 3. Despite the fact that at that time, the plaintiff had not filed a request to proceed without prepaying the filing fee, the court issued an order the next day under 28 U.S.C. §1914(b)(4), stating that it would not prohibit the plaintiff from bringing a civil lawsuit merely because he didn't have the money to pay the initial partial filing fee, and it granted the plaintiff a waiver of payment of the initial partial filing fee. Dkt. No. 5. The court informed the plaintiff that he still would be obligated to pay the full filing fee under the statutory formula in 28 U.S.C. §1915(b)(2). Id.

On March 23, 2020, the plaintiff filed a motion for leave to proceed without prepaying the filing fee. Dkt. No. 7. The court will grant the plaintiff's motion and will allow him to pay the full filing fee over time in the manner explained at the end of this order.

## II. Screening the Complaint

### A. Federal Screening Standard

Under the Prison Litigation Reform Act (PLRA), the court must screen

2

complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting

under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

  B. Allegations in the Complaint

The plaintiff explains that during all the events described in the complaint, he was housed at the Brown County Jail. Dkt. No. 1 at ¶13. He has sued Nurse Pagels "c/o Correct Care Solutions" and Brown County. Id. at page 1.

The plaintiff alleges that on July 29, 2016, he ingested "numerous" pills and used a pencil to cut a long, deep laceration into his arm; he says that he intended to commit suicide.[1] Dkt. No. 1 at ¶16. The plaintiff says that prior to taking the pills and cutting his arm, he had told the staff in his pod that he was suicidal and that he intended "to engage in the self harming behavior." Id. at ¶17. After prison staff learned that plaintiff harmed himself, they took him

---

[1] It isn't clear what "pills" the plaintiff alleges he took. He says that when he told Pagels he'd taken pills, "Pagels allowed plaintiff's report to be dismissed as if plaintiff had only been prescribed and was in possession of Ibuprophen." Dkt. No. 1 at ¶29. He indicates that Pagels acknowledged that he had taken "a handful of pills," and that she "later noted that plaintiff was also in possession of 'venlufuxine' which is an 'antidepressant', as well as 'loratadine'." Id. at ¶30. The plaintiff says that he told Pagles that he had taken "a handful of 'psychotropic' medication (pills) in an effort to further his suicide attempt." Id. at ¶31. Nowhere does the plaintiff explain exactly what pills he ingested.

4

out of his cell and put him in the day room, where he was seen by defendant RN Pagels. Id. at ¶18. Pagels looked at what the plaintiff describes as the "open, bleeding wound to his right forearm" and asked the plaintiff why he cut himself. Id. at ¶19. The plaintiff responded, "Because I'm locked down all day. 24 hours every day. No visits, day room, etc." Id. The plaintiff says that Pagels "chose to put gauze into the wound," while telling him that he shouldn't have done that and that he needed to think about what he did. Id. The plaintiff explains that he told Pagels that he needed stitches, and that Pagels couldn't punish him for being suicidal. Id. He contends, however, that Pagels left the pod without giving him stitches and "chose not to recommend that plaintiff be giving stitches for his wound." Id.

At some point, Pagels came back to "view the cotton gauze that she had stuck into the wound." Id. at ¶24. The plaintiff says that the blood had dried and caused the gauze to stick to the wound; he says Pagels "ripped it out causing the wound to begin bleeding again," and causing him more pain and suffering. Id. The plaintiff again informed Pagels that he needed stiches. Id. at ¶25. He says that again, Pagels refused and did not recommend to anyone else that he get stitches. Id. The plaintiff alleges that Pagels "negligently" classified the wound as "superficial," when he says it was a laceration that required stitches. Id. at ¶26. The plaintiff asserts that the only treatment that Pagels "or RN Bolinski" provided him was gauze, antibacterial cream and ibuprofen; he asserts that none of these provided him relief or care. Id. at 26.

5

The plaintiff states that no Health Services Unit supervisor ever came to assess whether he needed stitches, and that he never was provided stitches by jail staff or by its medical contractor, Contact Care Solutions. Id. at ¶20. He says that for over a year, he continued to suffer pain and discomfort from the injury on his right forearm. Id. at ¶21. The plaintiff explains that around March 30, 2018—almost two years after the self-harm incident—he was taken from the Wisconsin Secure Program Facility to U.W. Health in Madison "for 'follow up 1 week status as well as excisions and primary closure of a right forearm scar.'" Id. at ¶22. The plaintiff alleges that he filed a grievance with the jail complaint department. Id. at ¶27.

The plaintiff says that Correct Care Solutions failed to train its contract nursing staff—in particular, Pagels—in how to distinguish a superficial cut or scrape from a long, deep laceration. Id. at ¶28. He contents that Correct Care Solutions didn't require a supervisor-level employee to thoroughly inspect or check his medical treatment, and that as a result, he never received proper care for his serious medical need. Id.

The defendant asks for punitive damages of $20,000 as to each defendant and compensatory damages of $100,000 from Pagels and $50,000 in "actual damages" as to each defendant for malpractice and negligent medical care. Id. at pages 7-8.

C.  Analysis

1. *Preclusion*

The plaintiff's claims are nearly identical to some of the claims he brought in Sierra-Lopez v. Brown County, *et al.*, Case No. 17-cv-1222-pp (E.D. Wis.). In that case, the plaintiff sued several correctional officers, Nurse Pagels and "Brown County Jail." Id. at Dkt. No. 13. He did not name Correct Care Solutions as a defendant.

a.  Nurse Pagels

In that case, Nurse Pagels (who is not a county employee) never responded to the complaint, and the plaintiff moved for default judgment. Id. at Dkt. No. 41. The court, in conjunction with deciding the other defendants' summary judgment motion, denied the plaintiff's motion for default judgment against Pagels. Dkt. No. 83. The court found that even if Pagels had admitted all the facts the plaintiff had alleged, the plaintiff would not have stated sufficient facts to show that he was entitled to judgment under the law. Specifically, the court found that Pagels was not deliberately indifferent in treating the plaintiff's self-inflicted wound:

> The plaintiff disagrees with the treatment Pagels provided. He believes that instead of cleaning and dressing the wound, Pagels should have stitched it, or had someone else stitch it. But Pagels, as a nurse, is a medical professional. "When a medical professional acts in [her] professional capacity, [she] 'may be held to have displayed deliberate indifference only if the decision by the professional is such a substantial departure from accepted professional judgement, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." McGee v. Adams, 721 F.3d

7

> 474, 481 (7th Cir. 2013) (quoting Roe v. Elyea, 631 F.3d 843, 857 (7th Cir. 2011)). "[N]either medical malpractice nor a mere disagreement with a [medical professional's] medical judgment amounts to deliberate indifference." Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)). The plaintiff has pled only a disagreement with Pagels' treatment decisions.

Id. at Dkt. No. 83 at 24-25.

At first glance, it would seem that the doctrine of collateral estoppel, or issue preclusion, bars the plaintiff's claim against Pagels in this case. "[O]nce a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit involving a party to the prior litigation." Easley v. Reuss, 247 Fed. Appx. 823, 826 (7th Cir. 2007) (citing Harrell v. U.S. Postal Serv., 445 F.3d 913, 921 (7th Cir. 2006)). Issue preclusion has four elements: "(1) the issue is the same as one involved in the prior action; (2) the issue was actually litigated; (3) the determination of the issue was necessary to the prior judgment; and (4) the party against whom preclusion is invoked was fully represented in the prior action." Id. at 826-27 (citing Wash. Group Int'l, Inc. v. Bell, Boyd, & Lloyd LLC, 383 F.3d 633, 636 (7th Cir. 2004)).

Both cases involve a claim of deliberate indifference for Pagels' treatment of the plaintiff's self-inflicted wound on July 29, 2016, so the first element is met—the issue is the same as the one involved in the prior action. The court's determination that Pagels was not deliberately indifferent was necessary to its decision to deny the plaintiff's motion for default judgment in the prior case.

8

The plaintiff—the party against whom preclusion would be invoked—participated (representing himself) fully in the prior case.

The question is whether, given that Pagels did not answer or respond in the prior case, the issue was "actually litigated." The plaintiff acknowledges in his complaint that he "has filed a prior lawsuit on some parties stemming from the same events giving rise to this cause of action." Dkt. No. 1 at ¶12. He says that this should not matter because "the parties in this action were never held to answer any claims brought against them in the case of RN Pagels whom never answered plaintiff's complaint" in the previous lawsuit. Id. The question is whether, in the previous case, the plaintiff had a full and fair opportunity to litigate the issue of whether Pagels was deliberately indifferent to his serious medical need.

The court concludes that he did not. In his default judgment motion against Pagels in the prior case, the plaintiff alleged only that Pagels had failed to respond. Sierra-Lopez v. Brown County, *et al.*, Case No. 17-cv-1222 at Dkt. No. 41. In his brief in opposition to the motion for summary judgment, the plaintiff realleged all the facts against Pagels—her putting gauze on the wound and refusing him stitches, removing the gauze, spraying him with something and applying a cream—but then argued only that the court should grant judgment in his favor because Pagels didn't answer. Id. at Dkt. No. 63 at 10-13.[2] Because the plaintiff did not argue the merits of his claim against Pagels,

---

[2] The plaintiff also filed his own motion for summary judgment in the prior

9

the court concludes that issue preclusion does not preclude him from bringing this second claim against her.

b. Brown County

In the prior case, the plaintiff sued the Brown County Jail. The court treated his claim that certain employees at the jail failed to train the jail staff (thus contributing to their failure to respond to the plaintiff's alleged serious medical need) as a failure-to-train claim against the County itself. Id., Dkt. No. 14 at 12-13. Brown County *did* answer the amended complaint in the prior case. Id. at Dkt. No. 28. Brown County filed for summary judgment in the prior case. Id. at Dkt. No. 43. In the prior case, the court concluded that the jail employees were not deliberately indifferent to the plaintiff's serious medical needs, and therefore dismissed the plaintiff's failure-to-train claim against the County. Id., Dkt. No. 83 at 25.

In *this* case, the caption of the plaintiff's February 24, 2020 complaint lists "Brown County" after Correct Care Solutions and before the word "Defendants." Dkt. No. 1 at 1. In his "Statement of Parties" section on page 2, however the plaintiff does not list Brown County as a party. Id. at 2. In his "Statement of Claims" section, he alleges no claims against Brown County. Id. at 2-3. In his prayer for relief, the plaintiff seeks no relief from the County. Id. at 7-8.

---

case, but similarly did not argue the merits of the claim against Pagels, averring only that she had not answered. Sierra-Lopez v. Brown County, *et al.*, Case No. 17-cv-1222, Dkt. No. 37 at 10-13.

The court can't say whether its judgment in the prior case involved the same issue as to Brown County because the court does not know what issue the plaintiff has raised with Brown County in this case. The court cannot conclude that issue preclusion bars the plaintiff's suit against Brown County.

          c.        Correct Care Solutions

Correct Care Solutions, as the plaintiff states in his complaint, was not named in the previous lawsuit. Dkt. No. 1 at ¶12. But that means that his claim against Correct Care Solutions is barred by the doctrine of *res judicata*, or claim preclusion. "Claim preclusion bars not only issues actually decided in a prior suit, but also those that could have been raised." Easley v. Reuss, 247 Fed. App'x. 823, 825 (7th Cir. 2007) (citing Highway J Citizens Group v. U.S. Dep't of Transp., 456 F.3d 734, 741 (7th Cir. 2006)). "It requires (1) a prior final judgment on the merits; (2) the same claim; and (3) the same parties or their privies." Id. (citing Tartt v. Nw. Cmty Hosp., 452 F.3d 817, 822 (7th Cir. 2006)). The court has rendered a final judgment on the merits on the claims of deliberate indifference and failure-to-train in the prior suit, meeting the first two elements. As for the third element, "res judicata bars subsequent suits against those who were not party to a prior suit if their interests are closely related to those who were." Tartt, 453 F.3d at 822. As Nurse Pagels' employer, and the contractor that provided Brown County with health care services at Brown County Jail, Contract Care Solutions' interests are closely related to the interests of the defendants named in the previous suit. Claim preclusion bars

11

the plaintiff's claims against Correct Care Solutions.

### 2. *Failure to State a Claim*

Although the court concluded that preclusion is not a basis for dismissing the plaintiff's claim against Nurse Pagels, there remains the question of whether his complaint states a claim against her for which a federal court may grant relief. It does not. As the court found in the 2017 case, even accepting all the plaintiff's factual allegations as true, the plaintiff has not stated a claim that Pagels was deliberately indifferent to his serious medical need. The court will assume, for the purpose of this order, that the injury to the plaintiff's forearm was a serious medical need. But even if every allegation the plaintiff makes is true, Pagels was not deliberately indifferent to that need. She put gauze on the wound. She came back later and removed the gauze, spraying the wound with something and applying a cream. As the court noted in the previous case, the plaintiff does not agree with this treatment. He insists that Pagels should have ordered stitches instead. But "neither medical malpractice nor a mere disagreement with a [medical professional's] medical judgment amounts to deliberate indifference." Greeno, 414 F.3d at 653 (citing Estelle, 429 U.S. at 106). The plaintiff has pled only a disagreement with Pagels' treatment decisions. That is not enough to state a claim for a constitutional violation. The plaintiff has not stated a claim against Nurse Pagels for which a federal court may grant relief.

The same is true for Brown County. In this complaint, the plaintiff has

12

not stated a single claim against Brown County. He has not said in this complaint that Brown County failed to train its staff, or that it had a pattern or practice of deliberately ignoring inmates' serious medical needs. The plaintiff has alleged nothing against Brown County.

The plaintiff also has alleged that the defendants—Pagels and Correct Care Solutions, in particular—committed malpractice in failing to order stitches for his forearm wound. "[N]either medical malpractice nor a mere disagreement with a [medical professional's] medical judgment amounts to deliberate indifference . . . ." Greeno, 414 F.3d at 653 (citing Estelle, 429 U.S. at 106). The plaintiff also has alleged that these defendants were negligent in caring for him, but to prove deliberate indifference, ""[s]omething more than negligence or even malpractice is required." Lockett v. Bonson, 937 F.3d 1016, 1022-23 (7th Cir. 2019).

The court found in the prior case, and finds again here, that the plaintiff has failed to state a claim against Pagels. In this case, the plaintiff has failed to state any claim against Brown County. And the plaintiff's claims against Correct Care Solutions are barred by claim preclusion. The court must dismiss the claims against all three defendants.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 7.

The court **ORDERS** that this case is **DISMISSED** under 28

U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) for failure to state a claim, because the plaintiff's claims against Correct Care Solutions are barred by claim preclusion and because he fails to state claims against Nurse Pagels and Brown County. The court will enter judgment accordingly.

The Clerk of Court will document that the plaintiff has incurred a "strike" under 28 U.S.C. §1915(g).

The court **ORDERS** that the plaintiff shall pay the $350 filing fee as he is able.

The court will email a copy of this order to DLSFedOrdersEastCL@doj.state.wi.us.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within thirty days of the entry of judgment. See Fed. R. of App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. See Fed. R. App. P. 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within twenty-eight days of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed

14

within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 7th day of August, 2020.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**